UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KRISTI L. SOMA,

                        Plaintiff,          CASE NO. C14-0870-RAJ-MAT

        v.

                                            REPORT AND RECOMMENDATION

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                        Defendant.

        Plaintiff Kristi Soma proceeds with counsel in her appeal of a final decision of the
Commissioner of the Social Security Administration (Commissioner).   The Commissioner
denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security
Income (SSI) after a hearing before an Administrative Law Judge (ALJ).   Having considered the
ALJ's decision, the administrative record (AR), and all memoranda, the Court recommends this
matter be REMANDED for further administrative proceedings.

                         **FACTS AND PROCEDURAL HISTORY**

        Plaintiff was born on XXXX, 1961.[1]  She completed high school, attended some college,
and previously worked as a game auditor.  (AR 41.)

_____

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case
Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE - 1

Plaintiff filed her DIB application in March 2011 and protectively filed for SSI in April 2012, alleging disability beginning March 15, 2008. (AR 120-21, 130-33.) She remained insured for DIB through June 30, 2010 and, therefore, was required to establish disability on or prior to that "date last insured" (DLI) in order to qualify for DIB. *See* 20 C.F.R. §§ 404.131, 404.321. Her applications were denied initially and on reconsideration, and she timely requested a hearing.

On September 17, 2012, ALJ Verrell Dethloff held a hearing, taking testimony from plaintiff. (AR 36-49.) Plaintiff appeared pro se at the hearing. On December 19, 2012, the ALJ issued a decision finding plaintiff not disabled. (AR 17-31.)

Plaintiff timely appealed. The Appeals Council denied review on May 15, 2014 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the March 15, 2008 alleged onset date.

At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found no severe impairment. Addressing severity in relation to plaintiff's DIB claim, the ALJ found insufficient evidence to evaluate the severity of plaintiff's mental impairment given the "very sparse record" for the period through plaintiff's DLI. (AR 22.) As to plaintiff's SSI claim, the ALJ found the record consistent with a finding of no severe mental impairment

REPORT AND RECOMMENDATION
PAGE - 2

from the protective filing date of April 13, 2012. (*Id*.) He added that, while there were opinions indicating plaintiff had significant functional mental limitations, those opinions were based on evaluations done well before the relevant time period and, therefore, given no weight. (AR 23.) However, the ALJ also rendered an alternative finding, deeming plaintiff's major depressive disorder severe at step two.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff had the RFC to understand, remember, and perform simple, repetitive work, as well as some complex tasks, up to four-to-five steps. With that RFC, the ALJ concluded plaintiff was able to perform past relevant work as a game auditor.

If a claimant demonstrates an inability to perform past relevant work or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ here further concluded that, assuming plaintiff could not perform her past relevant work, she would be found not disabled within the framework of Medical-Vocational Guideline Number 204. The ALJ, therefore, concluded plaintiff was not disabled at any time from the alleged onset date through the date of the decision.

This Court's review of the final decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more

REPORT AND RECOMMENDATION
PAGE - 3

than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the final decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in rejecting medical opinions and finding no severe impairment prior to the DLI, and erred in rejecting both her testimony and a lay witness statement. She also argues error in the RFC assessment and step four and five conclusions. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Opinions</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Less weight may be assigned to the opinions of "other sources," such as nurse practitioners. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, the ALJ's decision should reflect consideration of such opinions, Social Security Ruling (SSR) 06-3p, and the ALJ

REPORT AND RECOMMENDATION
PAGE - 4

1    may discount the evidence by providing reasons germane to each source.  *Molina v. Astrue*, 674

2    F.3d 1104, 1111 (9th Cir. 2012) (cited sources omitted).

3    A.    Dr. Nancy Connolly

4         Treating physician Dr. Nancy Connolly drafted a letter on June 30, 2010, stating plaintiff

5    was "unable to work at this time because of severe depression and emotional stress[,]" and

6    needed "counseling, medication and frequent follow-up in order to resolve these problem[s]."

7    (AR 246.)  Non-examining physicians Drs. Jan Lewis and Thomas Clifford opined there was

8    insufficient evidence to evaluate plaintiff's impairments prior to the DLI.  (AR 56, 65.)  The ALJ

9    was, therefore, required to provide specific and legitimate reasons for rejecting the opinion of Dr.

10   Connolly.

11        The ALJ gave no weight to the opinions of Dr. Connolly "as contemporaneous treatment

12   records do not substantiate such severity."  (AR 28.)  He stated:  "On that occasion, there was

13   noted depressed affect with crying during the evaluation, but there was otherwise no significant

14   clinical observation."  (*Id.* (citing AR 261-64).)  The ALJ concluded Dr. Connolly "likely relied

15   heavily, if not entirely," on plaintiff's self-report, of which the ALJ found credibility concerns.

16   (*Id.*)

17        Plaintiff denies the accuracy of the ALJ's statement as to contemporaneous treatment

18   notes, pointing to notes dated from June through August 2010 and showing plaintiff was having

19   difficulty relating to her daughter, issues with her insurance, difficulty getting a ride to see the

20   doctor, had her phone disconnected due to her inability to pay the bill, and called the clinic

21   reporting her fear she was having a "nervous breakdown."  (AR 277-84.)  However, in addition

22   to the fact that these notes appear to reflect plaintiff's reporting of a variety of situational

23   stressors, the ALJ reasonably interpreted the record as failing to substantiate Dr. Connolly's

REPORT AND RECOMMENDATION
PAGE - 5

opinion as to the severity of plaintiff's depression.   (AR 256, 261-65, 270-71, 277-84, 316-21.) The ALJ's reasonable interpretation should not be disturbed.   *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008) (ALJ is responsible for resolving conflicts in the medical record), and *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (when evidence reasonably supports either confirming or reversing the ALJ's decision, court may not substitute its judgment for that of the ALJ).   *See also Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Plaintiff also argues the ALJ erred in speculating Dr. Connolly relied on plaintiff's self-report.   She contends the ALJ should have further developed the record by contacting Dr. Connolly for clarification, noting Dr. Connolly rendered her opinion on plaintiff's exact DLI and the fact that plaintiff appeared pro se at hearing.   She also points to the ALJ's failure to address an evaluation completed by Dr. Brenda Havellana only nine days after the letter from Dr. Connolly.   (*See* AR 238, 246.)   Plaintiff maintains the relevance of the ALJ's errors to the step two conclusion, noting his reference to the "very sparse record for the Title II period[.]"   (AR 22.)   She contends the contradictory opinions of Drs. Lewis and Clifford were not alone sufficient evidence to reject the opinions of treating physician Dr. Connolly and examining physician Dr. Havellana.   *See Lester*, 81 F.3d at 831 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.")

The ALJ's decision reflects his reasonable interpretation of the record as containing a fairly minimal amount of evidence supportive of restrictions exceeding that assessed in the RFC, while reflecting "periodic subjective complaints of increased symptoms[,]" likely resulting, at

REPORT AND RECOMMENDATION
PAGE - 6

least in part, to noncompliance with treatment and situational factors, such as plaintiff's finances and her daughter, who had significant mental health issues. (*See* AR 21-22, 25-26.) Considering the evidence as a whole, the specific evidence from Dr. Connolly, and the evidence dated close in time to Dr. Connolly's letter and plaintiff's DLI, the ALJ can be said to have drawn a logical inference in concluding Dr. Connolly relied heavily on plaintiff's self-report. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.") (cited sources omitted). Nor is it clear the ALJ should have contacted Dr. Connolly for clarification as to his opinion. *See*, *e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (finding no duty to recontact where doctor's opinion was not supported by clinical evidence and was based on claimant's subjective complaints and the ALJ found the record adequate to make a determination as to disability). Therefore, considered in isolation, plaintiff fails to demonstrate error in relation to Dr. Connolly. However, as discussed below, the ALJ did err in his consideration of the evidence from Dr. Havellana. Considering the ALJ's failure to address the July 9, 2010 evaluation from Dr. Havellana and its close proximity in time to the opinion rendered by Dr. Connolly, the ALJ should also reconsider Dr. Connolly's opinion on remand, including any potential impact on his consideration of plaintiff's claim for DIB.

B.    Dr. Brenda Havellana

Dr. Brenda Havellana examined and completed psychological evaluations of plaintiff on July 9, 2010 and December 3, 2010. (AR 223-40.) The results of the evaluations were similar, including observation of plaintiff's marked depressed mood and feelings of hopelessness and the opinion she was markedly limited in a number of respects, while also reflecting a mini-mental status examination within normal limits and assessing a Global Assessment of Functioning

REPORT AND RECOMMENDATION
PAGE - 7

(GAF) score indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning.[2]   (*Id.*)   In the initial evaluation, Dr. Havellana deemed plaintiff chronically mentally ill and estimated she would be impaired as assessed for seven months maximum and three months minimum.   (AR 237-38.)   In the second evaluation, Dr. Havellana estimated the assessed limitations would persist for a maximum of nine months and a minimum of three months.   (AR 226.)

The ALJ only addressed Dr. Havellana's second evaluation.   He gave little weight, apart from the opinion as to plaintiff's ability to perform simple instructions, to the limitations assessed or GAF score "as such degrees of severity are inconsistent with the psychologist's own clinical observations."   (AR 27-28.)   He reasoned:

> For example, while the claimant was noted to be depressed with "minimal frustration tolerance", Dr. Havellana observed that the claimant was "adequately friendly and polite".   Moreover, Dr. Havellana reported that "despite the above mentioned difficulties", the claimant "presented with numerous strengths that will likely assist her in a vocational setting".   For instance, Dr. Havellana indicated that the claimant was adequately groomed, compliant with medication recommendations, and able to complete activities of daily living independently. The claimant's performance on the mental status exam also strongly indicates a greater cognitive capacity than implicated by these check-the-box findings.   For example, the claimant was able to follow more complex, 3-step commands.

(AR 28, internal citations to record and footnote omitted.)   The ALJ further noted that, even if the findings were consistent with the observations and testing, Dr. Havellana estimated the

---

[2] Dr. Connolly assessed plaintiff with GAF scores of 54 and 52.   (AR 224, 235.)   According to an earlier version of the Diagnostic and Statistical Manual of Mental Disorders (DSM), these scores reflect moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR 34 (4th ed. 2000).   The most recent version of the DSM does not include a GAF rating for assessment of mental disorders.   DSM-V at 16-17 (5th ed. 2013).   While the Social Security Administration continues to receive and consider GAF scores from "acceptable medical sources" as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.   Administrative Message 13066 ("AM-13066").

severity would last a maximum of nine months, "indicating her mental condition would not continue to cause significant functional limitations."   (*Id*.)

The ALJ erred in failing to address the July 2010 evaluation of this examining physician. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The ALJ must consider all medical opinion evidence."); 20 C.F.R. §§ 404.1457(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."), and *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must explain why significant probative evidence has been rejected).  The Commissioner argues any error was harmless because the ALJ alternatively found at step two that plaintiff's major depressive disorder was severe, and because the evaluation did not suffice to demonstrate an impairment satisfying the twelve-month durational requirement.  *See Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case."), and 42 U.S.C. § 423 (d)(1)(A) (disabling impairment must have lasted or be expected to last for twelve continuous months); 20 C.F.R. §§ 404.1505, 1509 (same).

However, the impact of this evaluation on both the ALJ's initial step two determination and the remainder of the ALJ's decision remains unclear.  For example, it is not clear whether the ALJ considered Dr. Havellana's first evaluation as a part of the sparse record for the DIB claim.  *See Lester*, 81 F.3d at 832 ("'[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'") (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).)  Nor did the ALJ address the question of whether Dr. Havellana's two evaluations considered together – estimating up to seven months impairment initially and up to nine months impairment subsequently – could be said to satisfy

REPORT AND RECOMMENDATION
PAGE - 9

the durational requirement.

The Court also finds the ALJ's remaining reasons for the rejection of Dr. Havellana's second evaluation problematic. For instance, the ALJ specifically qualified his observation that plaintiff was adequately friendly and polite with the observation that she nonetheless appeared depressed and presented with diminished frustration tolerance. (AR 225.) The mere fact that Dr. Havellana found plaintiff had adequate grooming, was compliant with her medications, and was able to perform her activities of daily living independently does not sufficiently undercut his opinions that plaintiff had marked limitations in her ability to learn new tasks, perform routine tasks without undue supervision, to communicate and perform effectively in a work setting with public contact, and to maintain appropriate behavior in a work setting. (AR 225-26.) Finally, Dr. Havellana's assessment of a moderate limitation in the ability to understand, remember, and persist in tasks by following complex instructions is not necessarily inconsistent with the fact that plaintiff was able to complete a three-step task, particularly when considered in relation to the fact that she could only recall one out of three items after a five-minute delay and was only able to complete a serial-sevens task slowly. (AR 225, 227.)

In sum, the ALJ's consideration of Dr. Havellana's opinions lacks the support of substantial evidence. The ALJ should consider both of Dr. Havellana's evaluations on remand.

C.   Dr. Jennifer Palermo

Dr. Jennifer Palermo examined plaintiff on July 12, 2011. (AR 303-06.) She assessed a GAF of 48 (AR 306), reflecting serious symptoms or any serious impairment in social, occupational, or school functioning. DSM-IV-TR at 34. *See supra* n.2. She described plaintiff's prognosis as fair and opined the following functional assessment:

The claimant appears to have clear ability to reason and understand. Remote,

REPORT AND RECOMMENDATION
PAGE - 10

recent, and immediate memories are all generally intact.  Sustained concentration and persistence appear somewhat challenging for this individual, though she does describe being generally able to follow the plot of television shows.  She is choosing to socially isolate herself at this point in time and appears to have some adaptation skills.

(AR 306.)

The ALJ gave the GAF score no weight, pointing to Dr. Palermo's opinion of plaintiff's clear ability to reason and understand.  (AR 27.)  He further noted that Dr. Palermo did not opine as to a significant cognitive or social limitation, stating only that plaintiff's sustained concentration and persistence appeared somewhat challenging, that she was choosing to socially isolate, and did appear to have some adaptation skills.  (*Id*.)

Plaintiff does not demonstrate error in the ALJ's reasoning.  Where a physician's report does not assign any specific limitations or opinions in relation to an ability to work, the ALJ need not provide clear and convincing or specific and legitimate reasons to reject the report.  *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010).  Dr. Palermo's observation that concentration and persistence appeared "somewhat challenging" does not reflect a specific assignment of limitation, particularly considering the fact that he followed up this observation with an example of plaintiff's admitted ability to concentrate and persist.  Also, there is no necessary discrepancy between Dr. Palermo's finding on examination that plaintiff followed a three-step command "with no difficulty[,]" and the ALJ's RFC finding that plaintiff could perform some complex tasks, up to four-to-five steps.  (AR 24 and 305.)  Further, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  Indeed, the "final responsibility for decision issues such as" an individual's RFC "is reserved to the Commissioner."  SSR 96-5P.  Finally, the ALJ reasonably pointed to Dr.

REPORT AND RECOMMENDATION
PAGE - 11

Palermo's opinion that plaintiff had a clear ability to reason and understand as a basis for rejecting the GAF score assessed. *See also supra* n.2. The ALJ, as such, need not reconsider the opinions of Dr. Palermo on remand.

D.   Lam L. Yoo, ARNP

Nurse practitioner Lam Yoo drafted a letter, dated September 12, 2012, describing plaintiff's treatment since August 30, 2010 and the continued efforts "to find the right regimen of medication and psychotherapy as her mental health continues to be disabling and is significantly compromising her quality of life."  (AR 341.)   The ALJ gave this opinion no weight "as treatment records largely only showed medication management with subjective complaints of which there are credibility concerns[.]" (AR 28 (citing AR 311-37, 342).)

Plaintiff rejects the ALJ's analysis, stating the treatment notes indicated plaintiff "struggled with motivation, isolation, negativity, and forgetfulness and had her medications adjusted several times because they were not working optimally." (Dkt. 13 at 13 (citing AR 342-47).)  However, a review of the treatment records provides support for the ALJ's interpretation. (*See* AR 311-37, 342-47.)   While plaintiff takes a different view of the record, she fails to demonstrate the ALJ's interpretation was not rational.  *Morgan*, 169 F.3d at 599.  The ALJ, as such, properly provided germane reasons for the rejection of Yoo's opinion.

Credibility

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

complaints." *Lester*, 81 F.3d at 834. "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ in this case found plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms not fully credible, and provided a number of clear and convincing reasons in support. (AR 25-27.) The ALJ reasonably considered: (1) medical evidence contradicting and/or failing to support the degree of limitation alleged, *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (considering fact that medical evidence did not support the degree of functional limitation claimed)); (2) evidence that noncompliance with treatment, including multiple instances of missed medication doses, and situational factors, such as plaintiff's finances and issues with her daughter, likely contributed to periodic complaints of increased symptoms, *see Tommasetti*, 533 F.3d at 1039 (ALJ appropriately considers unexplained or inadequately explained failure to follow a prescribed course of treatment), and *Sample*, 694 F.2d at 642 (ALJ may draw inferences logically flowing from evidence); (3) evidence that plaintiff's range of activities (including days spent walking her dog, taking care of paperwork, running errands, and cleaning the house, her ability to complete daily activities independently, and her reports she did her own cooking and grocery shopping, and "kept busy helping neighbors and crocheting for charity work") indicated greater cognitive and social capacity than alleged, *Molina*, 674 F.3d at 1112-13, and *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); and (4) the fact that plaintiff stopped working in

REPORT AND RECOMMENDATION
PAGE - 13

March 2008 due to a lack of work, not because of her impairment, and the inconsistency between her testimony she spent more than two years after she was let go looking for another job and her contention she has been unable to work since March 2008, *see Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly considered evidence plaintiff reported he left his job as a result of a lay off, rather than a work place injury), *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (ALJ properly considered evidence of claimant's attempts to seek employment), and *Light*, 119 F.3d at 792 (ALJ properly considers inconsistencies).

Plaintiff challenges all of the ALJ's reasons for not finding her fully credible, but fails to demonstrate the ALJ's interpretation of the evidence was not rational or otherwise demonstrate error in the ALJ's credibility conclusion.[3]  Accordingly, the ALJ need only reconsider plaintiff's credibility as necessitated by further consideration of the medical opinion evidence from Drs. Connolly and Havellana.

<u>Lay Testimony</u>

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment.  *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ can reject the testimony of lay witnesses only upon giving germane reasons.  *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996)

---

[3] For example, in relation to the ALJ's reliance on evidence of plaintiff repeatedly missing medication doses, plaintiff asserts error in the ALJ's failure to consider evidence of her difficulties affording appropriate care or transportation, and problems with her medical insurance and unpleasant side effects.  *See* SSR 82-59 (failure to follow prescribed treatment may be justifiable where claimant unable to afford); SSR 96-7p (ALJ should not draw inferences from failure to seek or pursue treatment without first considering explanations for that failure, including an inability to afford treatment).  However, as the Commissioner observes, the records cited by plaintiff in support of this argument do not show that plaintiff missed medication doses for any of those reasons.  (*See* AR 262 (plaintiff wanted, but could not afford counseling), AR 277 (difficulty finding a dentist to help with abscess due to lack of insurance), AR 281 (plaintiff had to check on transportation before making appointment); *cf.* AR 316 (plaintiff was taking smaller dose of medication after a friend mentioned "she was sleeping very 'heavy'", but she felt better at higher dose).)

REPORT AND RECOMMENDATION
PAGE - 14

1   (finding rejection of testimony of family members because, *inter alia*, they were

2   "'understandably advocates, and biased'" amounted to "wholesale dismissal of the testimony of

3   all the witnesses as a group and therefore [did] not qualify as a reason germane to each

4   individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

5       The ALJ here described lay evidence provided by plaintiff's friend, Faith Mitchell, and

6   found it consistent with plaintiff's self-report.  (AR 28, 195-202.)  Mitchell's observations

7   included, for example, that plaintiff was unable to get dressed, "cries all day every day[,]" and

8   was unable to handle stress.  (*Id*.)   The ALJ accorded the statement no weight as it was

9   inconsistent with plaintiff's admission that she kept busy helping neighbors and crocheting for

10  charity work, and her admitted daily activities.  (AR 29 (citing AR 361 ("[R]eports she keeps

11  busy helping neighbors, crocheting for charity work and 'activity good right now – no pressure',

12  states at times she is 'on edge.'"))

13      Plaintiff avers inconsistency between the ALJ's finding that Mitchell's statement was

14  consistent with plaintiff's testimony, and the ALJ's finding that Mitchell's statement was

15  inconsistent with plaintiff's admissions as to her activities.  However, there is no inconsistency in

16  the ALJ's findings.  That is, the ALJ acknowledged that Mitchell and plaintiff attested to a

17  similar degree of limitation, but reasonably concluded their assertions as to plaintiff's limitations

18  were inconsistent with evidence in the record as to plaintiff's admitted activities.  Also, while

19  plaintiff maintains the ALJ had insufficient information regarding how often or for how long she

20  crocheted or helped her neighbors, the ALJ can properly rely on this evidence and evidence of

21  plaintiff's other activities as germane reasons for rejecting Mitchell's report.  *See Carmickle*, 533

22  F.3d at 1164 (ALJ may discredit lay testimony based on inconsistency between lay statement and

23  evidence of claimant's activities), and *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001)

REPORT AND RECOMMENDATION
PAGE - 15

1    (germane reasons for discounting lay testimony included inconsistency with medical evidence,

2    evidence of claimant's activities, and claimant's reports).

3                                    Steps Four and Five

4           Plaintiff argues the ALJ's RFC finding failed to encompass all of her limitations, pointing

5    to the alleged errors in the consideration of medical opinions and asserting an absence of

6    sufficient support for the limitations assessed in relation to concentration, persistence, or pace,

7    and the failure to include any social limitations.  Because these arguments in large part restate

8    the arguments addressed above, plaintiff fails to demonstrate error.  *See Stubbs- Danielson v.*

9    *Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).  Nor does plaintiff otherwise demonstrate error

10   in the ALJ's consideration of evidence in the formulation of the RFC. However, the ALJ should

11   reconsider plaintiff's RFC as necessitated by further consideration of the evidence from Drs.

12   Connolly and Havellana.

13          Plaintiff also argues step four error given the failure to identify the mental requirements

14   for the position of game auditor, the failure to cite to the relevant job description in the

15   Dictionary of Occupational Titles (DOT), and the failure to perform the functional analysis

16   required by SSR 82-62 by identifying the requirements of the job and comparing those

17   requirements to plaintiff's abilities.  Again, however, the ALJ did not err.  The ALJ did describe

18   the physical and mental demands of plaintiff's past relevant work as a game auditor.  (AR 29

19   ("The claimant described job tasks as moving boxes of pull-tab games using a hand truck,

20   counting samples and winners, using a scale, and checking paperwork.") (citing AR 150, 41-

21   42).)  He further properly relied on plaintiff's work history report and her own testimony as to

22   how the work was performed.  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).

23   Comparing plaintiff's RFC with the mental demands of the work, the ALJ concluded plaintiff

REPORT AND RECOMMENDATION
PAGE - 16

could perform the job of game auditor as she actually performed the job. (AR 29.) Having found as such, the ALJ was not required to render additional findings as to how the job is generally performed, or to consult a source such as the DOT in making such a determination. *Pinto*, 249 F.3d at 844-46.

The ALJ also found plaintiff would not be found disabled as considered within the framework of the Medical-Vocational Guidelines, or "grids," as interpreted by SSR 85-15, because, even if limited to work involving simple, repetitive tasks, the universe of unskilled work would not be significantly eroded. (AR 29.) Reiterating the contention the ALJ failed to address significant nonexertional limitations in the RFC, plaintiff avers error because such limitations erode the occupational base for unskilled work, preclude application of the grids, and necessitate vocational expert testimony. *See* SSR 83-12, 83-14, 85-15. However, again, plaintiff fails to demonstrate error in the RFC assessment. The ALJ, as such, did not err in his step five conclusion. SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.") The ALJ, therefore, need only revisit this step, and the conclusion at step four, as required by any further consideration of the medical evidence.

<u>CONCLUSION</u>

This matter should be REMANDED for further administrative proceedings.

<u>DEADLINE FOR OBJECTIONS</u>

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your

REPORT AND RECOMMENDATION
PAGE - 17

right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on <u>**December 5, 2014**</u>.

DATED this <u>20th</u> day of November, 2014.

Mary Alice Theiler
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 18